IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEWAYNE CUNNINGHAM, #190108, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:20-cv-44-WKW-JTA |
| D. GRIER, | ) ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Dewayne Cunningham initiated this *pro se* 42 U.S.C. § 1983 action in or around January 2020.[1] (*See* Doc. No. 1.) Thereafter, Defendant D. Grier filed an Answer (Doc. No. 11) and Special Report (Doc. No. 12), in which he moves for summary judgment, and Plaintiff responded (Doc. Nos. 14, 17, 18). Upon consideration of the parties' submissions, and for the reasons set forth below, the undersigned RECOMMENDS that Defendant's Special Report be construed as a motion for summary judgment; the motion be GRANTED; and this case be DISMISSED.

## I.    THE COMPLAINT

The Complaint alleges the following factual allegations in their entirety:

At Elmore Corr. Facility in Dorm C-1 I [Plaintiff] asked [Defendant] to call for a superviszer [sic] and he refused. Then when I said I was going to cut myslef [sic] so he would half [sic] to call for a superviszer [sic], [Defendant] said go ahead do it. All this is on viod [sic] tape.

---

[1] Although Plaintiff's Complaint (Doc. No. 1) is not dated, the Court received the Complaint on January 17, 2020.

(Doc. No. 1 at 3.) Based on these allegations, Plaintiff claims Defendant "create[d] a sercurity [sic] and safty [sic] violation[] by not doing his job."[2] (*Id.* at 4.) As relief, Plaintiff seeks monetary damages. (*Id.*)

## II.    MOTION BEFORE THE COURT

On January 22, 2020, the Court issued an Order directing Defendant to file a Special Report addressing Plaintiff's claims (Doc. No. 4), which Defendant did on March 20, 2020 (Doc. No. 12). In his Special Report, Defendant moves for judgment as a matter of law and provides evidentiary materials in support. (*Id.*) On March 23, 2020, the Court issued another Order directing Plaintiff to file a response to the Special Report (Doc. No. 13), which the Court received on April 13, 2020 (Doc. No. 14). On July 8, 2020 and November 20, 2020, the Court received two supplemental responses from Plaintiff.[3] (Doc. Nos. 17, 18.) In its March 23 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendant's Report and Plaintiff's response as a motion for summary judgment and response. (Doc. No. 13 at 2–3.) No objections were filed. Thus, the Special Report may now appropriately be construed as a motion for summary judgment.

## III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to

---

[2] Plaintiff later clarified that he seeks to state an Eighth Amendment deliberate indifference claim. (*See* Doc. No. 14 at 3–6.)

[3] Plaintiff's second supplemental response, the sworn declaration of a purported inmate witness, was submitted long after the Court's imposed deadline of July 16, 2020. (*See* Doc. Nos. 16, 18.) Nevertheless, the Court will accept the untimely filing and address it herein.

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do

3

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough

of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## IV.   RELEVANT FACTS[4]

On December 29, 2019, Plaintiff approached Defendant and asked him to call a supervisor.[5] (Doc. Nos. 1 at 3; 12-1 at 1; 12-2 at 2; 17-1 at 1; 18 at 1.) Defendant did not do as Plaintiff asked. (Doc. Nos. 1 at 3; 12-1 at 1; 17-1 at 1; 18 at 1–2.) In response, Plaintiff verbally threatened to cut himself, and Defendant replied, "[G]o ahead do it."[6] (Doc. Nos. 1 at 3; 12-1 at 1; 17-1 at 1; 18 at 2.) Thereafter, Plaintiff pulled out a razor, at which point Defendant gave Plaintiff a loud, verbal command to drop the razor and called for assistance. (Doc. Nos. 12-1 at 1; 12-2 at 2; 18 at 2.) Plaintiff then cut himself with the razor. (Doc. Nos. 12-1 at 1; 12-2 at 2; 17-1 at 1; 18 at 2.)

---

[4] These facts derive from the evidentiary materials attached to Defendant's Special Report (Doc. Nos. 12-1 through 12-4); Plaintiff's sworn declaration (Doc. No. 17-1); the sworn declaration of witness Clay Hodge (Doc. No. 18); and Plaintiff's Complaint (Doc. No. 1), which was signed under penalty of perjury. *See Walker v. Poveda*, 735 F. App'x 690 (11th Cir. 2018) ("[Plaintiff] verified his complaint . . . in accordance with 28 U.S.C. § 1746 by attesting to the truth of his factual assertions under penalty of perjury, and we have held that pleadings verified under § 1746 are admissible (and may substitute for sworn affidavits) on summary judgment."). They are undisputed except where otherwise noted.

[5] There is a factual dispute regarding what Plaintiff specifically sought from Defendant. Plaintiff contends that he asked Defendant to call a supervisor, while Defendant contends that Plaintiff asked to be released for pill call. This distinction is irrelevant to the issue of summary judgment; however, the Court will nevertheless accept Plaintiff's evidence as true and draw all justifiable inferences in his favor. *See Tipton*, 965 F.2d at 999.

[6] There is a second—more relevant—factual dispute regarding whether Defendant verbally responded to Plaintiff's threat. Plaintiff contends that Defendant responded, "go ahead do it," while the incident report and other evidence submitted by Defendant contain no such statement. Nevertheless, for purposes of resolving summary judgment, the Court will again accept Plaintiff's evidence as true and draw all justifiable inferences in his favor. *See Tipton*, 965 F.2d at 999.

Within minutes of Plaintiff cutting himself, he was transported to the Staton Health Care Unit for a medical assessment and treatment for his self-inflicted injury. (Doc. No. 12-2 at 2.) While being assessed and treated, Plaintiff stated that he "cut [his] wrist because [Defendant] would not call [a] supervisor" and he had "[n]o thoughts of suicide." (Doc. No. 12-2 at 4, 5.) He reiterated, "I did it for attention—I don't want to kill myself!" (Doc. No. 12-3 at 60.) Nevertheless, Plaintiff was placed on acute suicide watch, and a crisis cell was located for him at Holman Correctional Facility. (Doc. No. 12-2 at 2.) Plaintiff was immediately transferred to Holman, where he immediately received another medical assessment upon arrival. (Doc. No. 12-2 at 2, 5.) The entire interaction between Plaintiff and Defendant at issue in this case occurred within approximately three minutes. (Doc. No. 12-2 at 2.)

## V.   DISCUSSION

As noted above, there appears to be a genuine factual dispute regarding the interaction between Plaintiff and Defendant prior to Plaintiff pulling out a razor and cutting himself. There is conflicting evidence in the record as to what Plaintiff initially sought from Defendant and whether, when Plaintiff threatened to cut himself, Defendant responded "go ahead do it." However, as will be discussed below, these factual disputes are not material to this action; even accepting Plaintiff's evidence as true and drawing all justifiable inferences in his favor, as the Court must at this stage, he fails to demonstrate a violation of his Eighth Amendment rights.

Under the Eighth Amendment, prisoners have a right to adequate medical care and treatment, which generally includes "a right to be protected from self-inflicted injuries."

*Watson v. Edelen*, 76 F. Supp. 3d 1332, 1368 (N.D. Fla. 2015) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)). "To establish liability for a prisoner's self-harm . . . the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner physically harming himself." *Id.* (citation omitted). Deliberate indifference requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted).

Specifically, "[t]o be deliberately indifferent to a strong likelihood that [a] prisoner will harm himself, the [defendant] must be subjectively aware that the combination of the prisoner's self-harm tendencies and the feasibility of self-harm in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will self-inflict harm." *Watson*, 76 F. Supp. 3d at 1368–69 (citing *Gish v. Thomas*, 516 F.3d 952, 954–55 (11th Cir. 2008)); *see also Greffey v. State of Ala. Dep't of Corr.*, 996 F. Supp. 1368, 1382 (N.D. Ala. 1998) ("Case law indicates that a 'strong likelihood' of suicide [or self-harm] does not exist . . . unless all of the following factors are present: (1) the inmate previously had threatened or attempted suicide [or self-harm]; (2) that prior threat or attempt was known to the defendants; (3) the prior threat or attempt was somewhat recent; and, (4) the prior threat or attempt appeared genuine.").

For purposes of this Recommendation, the Court will assume that Plaintiff asked to speak to a supervisor; threatened to cut himself if Defendant did not allow him to speak to a supervisor; and was told to "go ahead [and] do it" by Defendant, as Plaintiff contends. Even accepting each of these things as true, as the Court must at the summary judgment

stage, Plaintiff has failed to demonstrate deliberate indifference by Defendant, as the record evidence does not establish subjective awareness of a strong likelihood that Plaintiff would harm himself.

The Court recognizes that, under certain circumstances, a defendant telling a plaintiff to "go ahead [and] do it" after the plaintiff threatened to cut himself may support a deliberate indifference claim. *See Greason v. Kemp*, 891 F.2d 829, 835–36 (11th Cir. 1990) ("Where prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide [or self-harm], their failure to take steps to prevent that inmate from committing suicide [or self-harm] *can* amount to deliberate indifference.") (emphasis added). However, numerous courts presented with similar facts to this case have found no deliberate indifference where the defendant either did not actually believe the plaintiff would harm himself or did not know the plaintiff had the means to harm himself. *See, e.g., Gordy v. Agamyan*, Case No. CV 18-2590-GW (JPR), 2020 WL 9264840, at *11 (C.D. Cal. Aug. 31, 2020) (holding defendant's comments that she "d[idn't] care" that plaintiff was going to "slice [his] wrist or hang [him]self" and would "come back when [he] hurt or killed [him]self," while undoubtedly callous, did not constitute deliberate indifference because the evidence indicated that she did not believe he was actually suicidal).

For instance, in *Bell v. Stigers*, the Eighth Circuit considered a case in which a detainee stated to a jail official, "I think I'll shoot myself." 937 F.2d 1340, 1341 (8th Cir. 1991). In response, the official stated, "Well[,] sorry we don't have a gun handy." *Id.* The official then failed to check the suicide box in the security risk section of the detainee's

Arrest Report because he did not believe the detainee's remark to be a legitimate suicide threat. *Id.* Later that evening, the detainee attempted suicide, and his parents sued the official for deliberate indifference. *Id.* at 1341–42. The Eighth Circuit granted summary judgment for the official, stating:

> A single off-hand comment about shooting oneself when no gun is available cannot reasonably constitute a serious suicide threat. [The detainee's] remark simply does not rise to a display of suicidal tendencies. Moreover, even if a listener more sensitive than [the jail official] might have taken the remark seriously, [his] failure to interpret it as a genuine manifestation of a suicide threat would at most constitute negligence, not deliberate indifference.[]

*Id.* at 1344. Thus, the Eighth Circuit concluded, "Because plaintiffs [did] not come forward with evidence sufficient to establish that [the official] possessed the level of knowledge required under the deliberate indifference standard," summary judgment was proper. *Id.* at 1345.

Other courts within the Eleventh Circuit have come to the same conclusion when presented with similar scenarios. *See, e.g., Buckman v. Emanoilidis*, Case No. 3:19-cv-953-MMH-PDB, 2021 WL 2660971, at *5 (M.D. Fla. June 29, 2021) (granting summary judgment for defendant where plaintiff "fail[ed] to present any evidence that [defendant] had any way to know that [plaintiff] possessed the makeshift weapon [he used to cut himself] much less that he had actual subjective knowledge of the weapon"); *Watson*, 76 F. Supp. 3d at 1374–75 (granting summary judgment for defendants because the evidence established that plaintiff did not have a genuine desire to harm himself and, absent "a serious mental health need, he [could] not establish an Eighth Amendment violation").

Here, similar to the above cases, there is no record evidence nor any allegation by Plaintiff that he was suicidal or had a history of self-harm about which Defendant was aware. To the contrary, throughout Plaintiff's medical record, there are numerous notations indicating he had no special mental health needs, no expressions of suicidal ideation, and no previous suicide or serious self-harm attempts. (Doc. Nos. 12-3 at 4, 8, 13, 31, 32, 33, 55, 56, 57, 58, 64, 69; 12-4 at 9, 35, 36.) Indeed, after he cut his wrist, Plaintiff stated multiple times that he had no suicidal thoughts and did not want to kill himself, and he claimed he only cut himself for attention and because Defendant would not do as he asked. (Doc. Nos. 12-2 at 4, 12-3 at 60.)

Moreover, there is no record evidence suggesting that Defendant knew Plaintiff had the means of carrying out his threat when he allegedly told Plaintiff to "go ahead [and] do it." To the contrary, the evidence—including the sworn declaration of witness Clay Hodge proffered by Plaintiff—indicates that Plaintiff produced a razor and showed it to Defendant only *after* his initial threat and Defendant's response. (Doc. No. 18 at 2.) Upon production of the razor, Defendant immediately ordered Plaintiff to drop it and called for assistance. (Doc. No. 12-2 at 6.) When Plaintiff then cut himself despite Defendant's command, he was transported to Staton Health Care Unit for a medical assessment and treatment within mere minutes. (Doc. No. 12-2 at 2, 3.)

Thus, based on the record before the Court, Plaintiff "[did] not come forward with evidence sufficient to establish that [Defendant] possessed the level of knowledge required under the deliberate indifference standard." *See Bell*, 937 F.2d at 1345. Additionally, Defendant's "prompt action after Plaintiff escalated his self-injurious behavior

demonstrates that [he] was not consciously ignoring his [self-harm] risk . . . even if [his initial] alleged statement to him revealed a certain amount of hostility." *See Gordy*, 2020 WL 9264840, at *12. Indeed, while the Court certainly does not condone the callous statement allegedly made by Defendant, the complete dearth of evidence that he actually believed Plaintiff would harm himself or had the means to harm himself precludes a finding of deliberate indifference.[7] Accordingly, because Plaintiff has failed to present evidence in support of a necessary element of his claim on which he bears the ultimate burden of proof, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

## VI.   CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1.     Defendant's Special Report (Doc. No. 12) be construed as a motion for summary judgment;

2.     the motion for summary judgment be GRANTED; and

3.     this case be DISMISSED with prejudice.

It is further ORDERED that, by **December 13, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

---

[7] To the extent Defendant's actions or inactions may have been negligent, "mere negligence or a mistake in judgment does not rise to the level of deliberate indifference." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). Furthermore, Defendant immediately attempted to correct any mistake once the risk of harm to Plaintiff became apparent and imminent, which occurred in less than three minutes.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 28th day of November, 2022.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE